UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois—CM/ECF LIVE, Ver 6.3.3
Eastern Division

| | |
|---|---|
| ROSEBUD RESTAURANT, INC. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No: 1:20—cv--05526 |
| ) | Honorable Virginia M. Kendall |
| QBE NORTH AMERICA ) | |
| a/k/a QBE AMERICAS, INC a/ka QBE ) | |
| INSURANCE GROUP LIMITED and ) | |
| REGENT INSURANCE CO. ) | |
| ) | |
| Defendants, ) | |

**FIRST AMENDED COMPLAINT AT LAW**

Plaintiff, ROSEBUD RESTAURANT, INC., (Plaintiff), by and through its attorneys, CUDA LAW OFFICES, LTD., complaining of the Defendants QBE NORTH AMERICA, a/k/a QBE AMERICAS, INC, a/k/a QBE INSURANCE GROUP LIMITED (hereinafter referred to as "QBE") and REGENT INSURANCE CO. (hereinafter referred to as "REGENT")., for its First Amended Complaint at Law against Defendants, QBE and REGENT, alleges as follows:

**INTRODUCTION**

1. Plaintiff is the owner and operator of eleven restaurants in Chicago, Naperville, Deerfield, Rosemont, and Lemont, Illinois, which have been forced, by recent orders issued by the State of Illinois, to cease operations—through no fault of its own—as part of the State's efforts to slow the spread of the COVID-19 global pandemic. The closures mandated by these orders present an existential threat to Plaintiff's business that employs hundreds of Illinois residents. To protect its business from situations like these, which threaten the livelihood of Plaintiff's employees due to factors wholly outside of its control, Plaintiff obtained business interruption insurance from QBE and REGENT. In blatant breach of its insurance obligations

that it voluntarily undertook in exchange for Plaintiff's premium payments, QBE and REGENT has denied Plaintiff's claims arising from the State-ordered interruption of their business.

2. As a result, Plaintiff now brings this action against QBE and REGENT for their failure to provide insurance coverage for the business income Plaintiff lost because of the ongoing Coronavirus (COVID-19) pandemic and its failure to honor its obligations under the commercial businessowners insurance policy issued to Plaintiff, which provides coverage for losses incurred due to a "necessary suspension" of its operations, including when its business is forced to close due to a government order.

3. On March 15, 2020, during the term of the policy issued by QBE and REGENT to Plaintiff, Illinois Governor Pritzker issued an order first closing all restaurants and bars to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. The March 15 and March 20 orders are hereinafter collectively referred to as the "Closure Orders."

4. As a result of the Closure Orders, Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues and forcing Plaintiff to furlough or lay off the majority of its employees.

5. Despite QBE and REGENT's express promise in its policy to cover the Plaintiff's business interruption losses when the government forces a closure, QBE and REGENT has issued blanket denials to Plaintiff for any losses related to the Closure Orders, without first conduction any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law.

6. To the extent that QBE and REGENT has provided any reason to Plaintiff for its categorical assertion that Plaintiff's losses are not covered, it is based on the assertion that the

actual or alleged presence of the coronavirus, which led to the Closure Orders that prohibited Plaintiff from operation its business, does not constitute "direct physical loss".

7. QBE and REGENT's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Illinois. Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." *See, e.g. Bd. Of Educ. Of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.,* 720 N.E.2d 622, 625-26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

8. If QBE and REGENT had wanted to exclude pandemic-related losses under the Plaintiffs policy—as many other insurers have done in other policies—it easily could have attempted to do so on the front-end with an express exclusion. Instead, QBE and REGENT waited until after it collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure on the back- end through its erroneous assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.

9. The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines QBE and REGENT's assertion that the presence of COVID-19, does not cause "physical loss or damage" to property. Indeed, if a virus could never result in a "physical loss" to property, there would be no need for such an exclusion. Moreover, QBE and REGENT's assertion ignores the fact that their policies promised to provide coverage for losses incurred due to government actions "taken in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under their policies.

10. Thus, QBE and REGENT's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials appear to be driven by QBE and REGENT's desire to preempt its own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as QBE and REGENT is obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiff in exchange for valuable premiums.

11. As a result of QBE and REGENT's wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained, for breach of contract, and for bad faith claims handling under 215 ILCS 5/155.

## **PARTIES**

12. Plaintiff is an Illinois Corporation with its principal place of business in Chicago, Illinois.

13. Defendants, QBE and REGENT are insurance company engaged in the business of selling and providing property and casualty insurance to commercial entities such as Plaintiff, in Illinois and elsewhere.

14. Defendant, QBE and REGENT, has submitted to Jurisdiction pursuant to 735 ILCS 5/2-209, because QBE and REGENT has (a) transacted business in Chicago, Illinois; (b) contracted to insure a person, property, or risk located within Illinois at the time of contracting; and (made a contract substantially connected with Illinois. In addition, QBE and REGENT, exercise substantial, systemic, and continuous contacts with Illinois by doing business in Illinois, seeking additional business in Illinois and subjection itself to the authority of the Illinois Department of Insurance.

## FACTUAL ALLEGATIONS

15. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-14 above.

### A. The Insurance Policy

16. In exchange for substantial premiums, QBE, through REGENT, sold a commercial property insurance policy ("the policy") promising to indemnify Plaintiff for losses resulting from occurrences, including closures caused by "civil authority" at any insured location, during the relevant period of time.

17. The Policy was issued to the Plaintiff at its principal place of business in Illinois.

18. The relevant provision setting forth the scope of coverage for business interruption losses are contained within the Business Income And Extra Expense Coverage Form. A copy of the Policy is attached here as "Exhibit A".

19. The Policy is an "all risk" policy that provides broad coverage for losses caused by any cause unless expressly excluded.

20. The Policy does not exclude losses from pandemics. Thus, the all-risk Policy purchased by Plaintiff covers losses caused by pandemics, such as COVID-19.

21. In addition to property damage loss, QBE and REGENT also agreed to "pay for the actual loss of Business Income" sustained by Plaintiff "due to the necessary suspension" of Plaintiff's operations during the period of business interruption caused "by direct physical loss of or damage to property at your 'covered location.'"

22. With respect to business interruption losses, "suspension" means: "(a) the slowdown or cessation of your business activities; or (b) that a part of all of a 'covered location' or scheduled location is rendered untenantable, if the following coverage applies: (1) business income, including 'rental value'; or (2) 'Rental value.'"

23. QBE and REGENT also promised to "pay necessary Extra Expense" Plaintiff incurs during the period of interruption that they "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises."

24. QBE and REGENT Policy also include "Civil Authority" coverage, pursuant to which QBE and REGENT promised to pay for the loss of Business Income and necessary Extra Expense sustained by Plaintiff "caused by action of civil authority that prohibits access" to Plaintiff's insured premises.

25. This Civil Authority coverage is triggered when any non-excluded cause results in "damage to property other than property" at the Plaintiffs premises and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions."

**B. The Plaintiff's Losses Due to the COVID-19 Pandemic and Closure Orders.**

26. On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus, otherwise known as COVID-19, constituted a global pandemic.

27. Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

28. In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-07 on March 15, 2020 requiring that all bars, restaurants, and movie theaters close to the public beginning on March 16, 2020 and continuing through March 30, 2020.

29. The continuous presence of the coronavirus on or around Plaintiffs premises has rendered the premises unsafe and unfit for their intended use and therefore caused physical property damage or loss under the Policies.

30. Executive Order 2020-07 was issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiffs establishment, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies. Executive Order 2020-07 specifically states, "the Illinois Department of Public Health recommends Illinois residents avoid group dining in public settings, such as in bars and restaurants, which usually involves prolonged close social contact contrary to recommended practice for social distancing," and that "frequently used surfaces in public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure."

31. Governor Pritzker's March 20, 2020 Closure Order (Executive Order 202010) closing all "non-essential" businesses in Illinois, including all restaurants and bars, likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs premises.

32. Like the March 15, 2020 Closure Order, the March 20, 2020 Order prohibited the public from accessing Plaintiffs establishments, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies.

33. As a result of the Closure Orders, Plaintiff has suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policy are increasing every day, but are expected to total millions of dollars. As a result of these catastrophic losses, Plaintiff has been forced to furlough its workers and may have to permanently close its location.

34. Following the March 15, 2020 Closure Order, Plaintiff submitted a claim to QBE and REGENT requesting coverage for its business interruption losses as promised under the Policy.

## COUNT I: DECLARATORY JUDGEMENT

35. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-34 above.

36. The Policy is an insurance contract under which QBE and REGENT was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their business.

37. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy.

38. QBE and REGENT has arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

39. An actual case or controversy exists regarding Plaintiffs rights and QBE and REGENT's obligations under the Policy to reimburse Plaintiff for the full amount of losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

40. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

    a. Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

      b. QBE and REGENT has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

      c. QBE and REGENT is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the four-week indemnity period and the necessary interruption of its business stemming from the COVID-19 pandemic.

## **COUNT II: BREACH OF CONTRACT**

41. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-40 above.

42. The Policy is an insurance contract under which QBE and REGENT was paid premiums in exchange for its promise to pay Plaintiffs losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close its business.

43. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet QBE and REGENT has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

44. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, QBE and REGENT has breached its coverage obligations under the Policy.

45. As a result of QBE and REGENT's breaches of the Policy, Plaintiff has sustained substantial damages for which QBE and REGENT is liable, in an amount to be established at trial.

## COUNT III: STATUTORY PENALTY FOR BAD FAITH DENIAL OF INSURANCE UNDER 215 ILCS 5/155

46. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-45 above.

47. Upon receipt of the Closure Order Claims, QBE and REGENT immediately denied Plaintiff's claim without conducting an adequate investigation, let alone a "reasonable investigation based on all available information" as required under Illinois law. See 215 ILCS 5/154.6.

48. QBE and REGENT's denials were vexatious and unreasonable.

49. QBE and REGENT's denials constitute "improper claims practices" under Illinois law—namely QBE and REGENT's (1) refusals to pay Plaintiffs claim without conducting a reasonable investigation based on all available information and (2) failure to provide reasonable and accurate explanations of the bases for its denial. See 215 ILCS 5/154.6 (h), (n).

50. QBE and REGENT has offered no reason for its denial and failed to raise any bona fide disputes as to whether the claim was covered by the Policy.

51. Therefore, pursuant to 215 ILCS 5/155, Plaintiff requests that, in addition to entering a judgment in favor of Plaintiff and against QBE and REGENT for the amount owed under the Policy at the time of judgment, the Court enter a judgment in favor of Plaintiff and against QBE and REGENT for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000. See 215 ILCS 5/155.

52. Plaintiff further requests that the Court enter a judgment in favor of Plaintiff and against QBE and REGENT in an amount equal to the attorneys' fees and costs incurred by Plaintiff

for the prosecution of this coverage action against QBE and REGENT, which amount will be proved at or after trial, pursuant to 215 ILCS 5/155.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. Enter a declaratory judgment on Count I of the Complaint in favor of Plaintiff and against QBE and REGENT, declaring as follows:

    a. Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic are insured losses under the Policy;

    b. QBE and REGENT has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs losses by issuing a blanket denial without conduction a claim investigation as required under Illinois law; and

    c. QBE and REGENT is obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic.

2. Enter a judgment on Count II of the Complaint in favor of the Plaintiff and against QBE and REGENT and award damages for breach of contract in an amount to be proven at trial;

3. Enter a judgment on Count III of the Complaint in favor of Plaintiff and against QBE and REGENT in the amount equal to the greater of (1) 60% of the amount which the trier of fact finds that Plaintiff is entitled to recover under the Policy, exclusive of costs; and (2) $60,000;

4. Enter a judgment in favor of Plaintiff and against QBE and REGENT in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against QBE and REGENT, pursuant to 215 ILCS 5/155, which amount is to be established at the conclusion of this action;

      5.      Award to Plaintiff and against QBE and REGENT prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by QBE and REGENT's wrongful refusal to pay Plaintiff for the full amount of costs incurred in connection with the Plaintiff's claim; and

      6.      Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

Respectfully submitted:

*Anthony Cuda*
Attorney for Plaintiff

Attorney No.: 3126045
CUDA LAW OFFICES, LTD.
6525 West North Avenue, Suite 204
Oak Park, Illinois 60302
708-383-4900