## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ROSEBUD RESTAURANT, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | Case No: 1:20—cv--05526 |
| ) | Honorable Virginia M. Kendall |
| **v.** ) | |
| ) | |
| **QBE NORTH AMERICA a/k/a QBE** ) | |
| **AMERICAS, INC a/k/a QBE INSURANCE** ) | |
| **GROUP LIMITED and REGENT** ) | |
| **INSURANCE CO.** ) | |
| ) | |
| **Defendants.** ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
### REGENT INSURANCE COMPANY'S MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT

Plaintiff, Rosebud Restaurant, Inc., ("Plaintiff") by and through its undersigned attorneys, hereby opposes the Motion to Dismiss the First Amended Complaint of Defendant Regent Insurance Company ("Defendant"), and in support states as follows:

### I. INTRODUCTION

Plaintiff is the owner and operator of eleven restaurants in Chicago, Naperville, Deerfield, Rosemont, and Lemont, Illinois. These restaurants have been forced, by recent orders issued by the State of Illinois (the "Orders"), to cease operations—through no fault of its own—as part of the State's efforts to slow the spread of the COVID-19 global pandemic. (ECF No. 18 at ¶1.)

Plaintiff did not and could not have foreseen the pandemic or the Orders. Plaintiff did, however, have the foresight to recognize that there are inherent risks in running a business in which all cannot be specifically foreseen. Plaintiff obtained a broad "all-risk" insurance policy from Defendant to guard against these risks. (ECF No. 1 at ¶16 – 25.) Defendant was happy to accept

the substantial premiums on Plaintiff's policy, but when Plaintiff filed a claim for losses resulting from the Orders, Defendant shirked its obligation to pay out and improperly denied the claims. To enforce its rights, Plaintiff brought the instant three count lawsuit for declaratory judgment, breach of contract, and bad faith denial of coverage (ECF No. 1, 18).

Instead of trying to remedy the situation amicably, Defendant continues to expend resources to try to avoid responsibility rather than doing the legal and ethical right thing by paying Plaintiff's claims. Defendant brought the instant motion seeking dismissal of plaintiff's causes of action for failure to state a claim. Its motion should be denied as Plaintiff has adequately stated a claim for each of its three causes of action.

## II.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive such a motion, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A Rule 12(b)(6) motion is not "an appropriate device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint." *Twombly*, 550 U.S. at 585 (internal citation omitted). Rather, at this stage, the court must accept all allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010).

**III.     ARGUMENT**

    **A.     Plaintiff's Insurance Policy is a Broad All Risk Policy with Additional Coverages**

As all parties agree, the relevant provisions of Plaintiff's insurance policy, which set forth the scope of business interruption losses, are contained in the Business Income and Extra Expense Coverage Form, a copy of which is attached to the operative First Amended Complaint as Exhibit A (ECF No. 18-1). The policy is a broad form of insurance policy called an "all risk" policy which covers losses from any cause, except for those losses that are expressly excluded under the policy (See ECF No. 18 at ¶19, Ex. A.). Specifically, the policy provides that the insurer "will pay for direct physical loss or damage to a Covered Property at 'covered locations' caused by or resulting from any Covered Cause of Loss." (ECF No. 18-1 at p. 55) Covered Cause of Loss is in turn defined as "Risks of Direct Physical Loss unless the loss is: 1. Excluded under Paragraph C. Exclusions; or 2. Limited under Paragraph D. Limitations.' (*Id.* at 56.). Physical loss is not further defined.

Coverage under the policy includes coverage for business income and extra expenses resulting from suspension of operations as well as additional coverage for action taken by civil authorities and where ingress and egress under certain circumstances. The relevant provisions provide as follows:

**8. Business Income And Extra Expense**

**a. Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at your "covered location". The loss or damage must be caused by or result from a Covered Cause of Loss.

**b. Extra Expense**

Extra Expense means the necessary expenses you incur during the "period of restoration" that you would not have incurred of there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

(ECF No. 18-1 at p. 51.)

**d. Additional Coverages**
**(1) Civil Authority**
…
When a Covered Cause of Loss causes damage to property other than the property at the "covered locations", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the "covered locations", provided the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the "covered locations" are within that area but are not more than two miles from the damaged property;

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property;
…

**(11)**
…
When a Covered Cause of Loss causes damage to property other than property at the "covered locations" but within two (2) miles of the "covered location", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense when ingress and egress to the "covered location" is prevented (other than coverage as provided by the Additional Coverage – Civil Authority)

(ECF No. 18-1 at p. 52, 56.)

In sum, Plaintiff's policy is an all-risk policy, that covers all direct physical losses unless those losses are explicitly excluded and where coverage applies provides additional coverages in certain circumstances.

**B.      Plaintiff Has Stated Claims Upon Which Relief Can Be Granted**

Plaintiff's three causes of action in this matter all rely on Plaintiff's entitlement to recovery under its insurance policy. This entitlement is the only component of Plaintiff's causes of action that Defendant attacks. The outcome of this motion to dismiss thus hinges on whether, based on the allegations of Plaintiff's complaint, taken as true, Plaintiff's alleged losses are covered by the insurance policy. Defendant contends that Plaintiff's losses are not covered by the policy based on two arguments: (1) Plaintiff did not suffer the "direct physical loss" required for coverage; and (2) Plaintiff is barred from recovering its losses by the policy's Virus Exclusion. Both of these arguments are inaccurate. Plaintiff is entitled to recover for its losses under the insurance policy and thus, has stated claims for declaratory relief, breach of contract, and bad faith.

**1.      Plaintiff Suffered a Direct Physical Loss to its Covered Properties.**

The primary issue in this case at this stage is one that has become familiar in COVID related business interruption cases across the country: whether construing Plaintiff's allegations as true, Plaintiff suffered a direct physical loss within the meaning of the policy.

As noted above, a "direct physical loss" is the trigger for coverage under the insurance policy. The policy itself does not define the terms "direct," "physical loss," or "physical damage." (See ECF 18-1.) Thus, under principles of insurance contract interpretation, this Court must consider the ordinary meaning of these terms. *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020) (Under Illinois law, the general rules governing interpretation of contracts also govern the interpretation of insurance policies.); *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000) (The language of a contract must be given its plain and ordinary meaning.)

Merriam Webster is useful in determining the plain meaning of the terms at issue. "Direct," when used as an adjective, is defined as "characterized by close logical, causal, or

consequential relationship," as "stemming immediately from a source," or as "proceeding from one point to another in time or space without deviation or interruption." *Direct,* Merriam-Webster (Online ed. 2021). "Physical" is defined as relating to "material things" that are "perceptible especially through the senses." *Physical*, Merriam- Webster (Online ed. 2021). "Loss" is defined as "the act of losing possession: deprivation," "the harm of privation resulting from loss or separation," the "failure to gain, win, obtain, or utilize," or a "decrease in amount, magnitude, or degree." *Loss*, Merriam-Webster (Online ed. 2021).

It follows that the plain meaning of the term "direct physical loss" includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions. This meaning encompasses a situation where businessowners and their employees, customers, vendors, suppliers, and others lose the full range of rights and advantages of using or accessing their business property.

Applying this principle of interpretation to the instant policy and case, Plaintiff has suffered and adequately alleged a "direct physical loss," within the plain meaning of these terms in the context of the Policy. Plaintiff's insured restaurant properties were rendered unusable by the Illinois Governor's March 2020 Closure Orders. (ECF No. 18 at ¶3, 28, 30-32.) The Orders required Plaintiff to cease operations, and customers were prohibited from visiting the Plaintiff's restaurants to purchase food. (*Id*. at ¶28, 30 - 32) As a result of the Orders, Plaintiff had to completely and immediately suspend its operations and lost its normal access to, use of, and operation of its properties and restaurant businesses conducted thereon. (*Id.*) Plaintiff had to completely suspend its operations. (*Id.*) In other words, Plaintiffs were expressly forbidden by government decree from accessing and putting their property to use for the income-generating purposes for which the property was insured. Accordingly, these allegations demonstrate that

Plaintiff lost the use of its property and could not accommodate customers as it did before the Orders. Plaintiff was expressly forbidden by government decree from accessing and putting their properties to use for the income-generating purposes for which the property was insured. The government decrees resulted in the immediate loss of use and access without any intervening conditions. This loss of use is a direct physical loss within the plain meaning of the term as used in the policy.

Defendant proposes an interpretation of direct physical loss that would require physical alteration to the property. (ECF No. 23 at p. 11 – 12.) This proposed interpretation is inconsistent with the plain meaning of the term as discussed above. Additionally, it would also improperly render policy language superfluous. *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 954–55 (7th Cir. 2020), *reh'g denied* (July 10, 2020) (All provisions of the policy should be read together; every part of the contract must be given meaning, so no part is meaningless or surplusage). The policy in the instant case provides coverage for "direct physical loss *or* damage." (ECF 18-1 at p. 15) Moreover, throughout the policy, there are consistent references to "loss or damage," reiterating the intent to distinguish "loss" and "damage." See ECF 18-1. Defendant's position incorrectly conflates "physical loss" with "physical damage." The use of the conjunction "or" means that a reasonable insured could understand the terms "physical loss" and "physical damage" to have distinct and separate meanings. The term "physical damage" can reasonably be read as requiring alteration to property. *See Damage,* Merriam-Webster (Online ed. 2021) ("loss or harm resulting from injury to person, property, or reputation"). Under Defendant's interpretation of the policy, if "physical loss" also requires structural alteration to property, then the term "physical damage" would be rendered meaningless. Meaning must be given to both terms so that neither is meaningless surplusage.

An expert opinion rendered by Kevin L. Glaser, CPCU, CIC, SCLA, ARM, AAI, AIC, ARM-P, AIS, supports a conclusion that the closure of Plaintiff's premises constitutes "physical loss of or damage to" Plaintiff's property. Mr. Glaser notes in his report and affidavit (attached hereto as Group Exhibit B), that "[a]t a minimum, when Coronavirus is present it must be cleaned to avoid its spread . . . In fact, it is uncontested that a commercial cleaning company was hired to thoroughly clean Rosebud's premises after discovering that two of their employees tested positive for COVID-19" (Glaser Report, p. 4). The Report goes on to note the conflicting information surrounding COVID-19 and its transmission. The extent to which the virus may affect or contaminate a building is still unknown, and the best methods for cleaning or eradicating the virus from physical surfaces is unclear. The date of loss "is the date that should be recognized as whether or not they had a claim under their policy, and, if so, damages that occurred on that date as a result. It is not fair to any policyholder for insurance carriers to take into account frequently changing information subsequent to the date that a claim is made and to then apply such newly gathered information retrospectively to the circumstances of a claim." *Id.* p. 5.

Even assuming arguendo that Defendant could establish its proposed interpretation was a reasonable interpretation of the policy, the motion to dismiss must still be denied. At most, an alternative reasonable interpretation of "direct physical loss" would establish ambiguity in how the term should be interpreted. When such ambiguity exists, the policy must be interpreted liberally in favor of the policy holder, in this case, the Plaintiff. *Bruder v. Country Mutual Insurance Co.,* 156 Ill. 2d 179, 193 (1993) (When a policy is ambiguous, the terms that limit insurer's liability should be liberally construed against the insurer).

## 2. Plaintiffs Insurance Claim is Not Barred by Any Policy Exclusion

As discussed above, the losses Plaintiff alleges as a result of the Orders closing restaurants fall within the general scope of coverage as well as additional coverage provisions. Accordingly, as a broad "all claims" type of policy, Plaintiff's claims are permitted unless explicitly excluded in the policy. No such exclusion applies, so Plaintiff's claims should proceed.

The only exclusion Defendant even claims applies is the "Virus Exclusion" (ECF No. 23 at p. 14 – 15.) The exclusion provides that Defendant "will not pay for loss or damage caused by or resulting from any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (ECF No. 18-1 at p. 59.). The exclusion, considered in context of the complaint at issue as well as the *entire policy*, does not bar Plaintiff from recovery under the policy. *Spectramed, Inc. v. Gould, Inc.*, 304 Ill. App. 3d 762, 770 (1998) (When interpreting a contract, a court must consider the document as a whole, rather than focusing upon isolated portions.). Plaintiff alleges that its losses were *caused by the Orders*, not by the presence of the virus on or at any of Plaintiff's insured properties. (See e.g., ECF No. 18 at ¶33 ["As a result of the Closure Orders, Plaintiff has suffered substantial Business Income losses and incurred Extra Expense."]) It is beyond refutation that an order is not a virus. Moreover, Plaintiff does not allege that the virus was present on the covered properties. Thus, the losses suffered by Plaintiff were not excluded under the virus exclusion.

In an attempt to avoid this natural and simple conclusion, Defendant contends that the virus exclusion applies because the orders were caused by the COVID-19 pandemic. This logic is misplaced. Again, the Orders, not the virus caused Plaintiff's losses. As stated by Kevin Glaser in his Report, "[t]he action of Illinois' Governor was the proximate cause of loss, not COVID-19 itself." Glaser Report, p. 11. Even assuming arguendo that the underlying cause of the Orders could

be considered, Defendants argument fails. As Defendant points out, Plaintiff alleges that the Orders were issued as a result of the COVID-19 *pandemic,* not merely from the COVID-19 virus. (ECF No. 23 at p. 16.) There is no exclusion for pandemics in the policy and thus, Plaintiff's insurance claims should not be excluded.

Contrary to Defendant's implication, a "pandemic" and "virus," are not synonymous and should not be treated as such for purposes of analysis of the policy. Merriam Webster offers the following definitions:

> Definition of *virus*:
>
> 1a : any of a large group of submicroscopic infectious agents that are usually regarded as nonliving extremely complex molecules, that typically contain a protein coat surrounding an RNA or DNA core of genetic material but no semipermeable membrane, that are capable of growth and multiplication only in living cells, and that cause various important diseases in humans, animals, and plants
> b : a disease or illness caused by a virus
> c : the causative agent of an infectious disease
>
> Definition of *pandemic* [noun]:
>
> 1 : an outbreak of a disease that occurs over a wide geographic area (such as multiple countries or continents) and typically affects a significant proportion of the population : a pandemic outbreak of a disease

*Virus, pandemic*, Merriam-Webster (Online ed. 2021). Under these definitions, a virus is singular in nature, while a pandemic necessarily includes far more than one instance of a disease, whatever may have caused.

The impetus for the Orders was a pandemic, not merely a virus. To illustrate the importance of the difference, it is useful to consider a hypothetical situation where there was just one instance of the COVID-19 vaccine. It is logical to conclude the state government would not likely have issued the Orders if the presence of COVID-19 virus were found at one of Plaintiff's restaurants and nowhere else in the state, country, or world. If such a singular occurrence of the

virus had resulted in interruption to Plaintiff's business, it may well have been excluded under the virus exclusion. That is not what occurred, or what Plaintiff is seeking compensation for. Again, a virus did not prompt the Orders: a pandemic did.

Further, In Defendant's motion to dismiss, they failed to include the full language contained in the Virus Exclusion. The exclusion is worded as follows:

> **k. Virus or Bacteria**
>
> (1) We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
> (2) However, the exclusion in Paragraph (1) above does not apply to the following:
> (a) Loss or damage caused by or resulting from "fungi" or wet rot or dry rot. Such loss or damage is addressed in Exclusion j.; or
> (b) Coverage otherwise provided under the Business Income And Extra Expense Additional Coverage for Food Contamination.

(ECF No. 18-1 at p. 60)

The relevant paragraphs to the virus exclusion contained in this policy is k(2) and k(2)(b) in which it states, "However, the exclusion in Paragraph (1) above does not apply to the following: Coverage otherwise provided under the Business Income And Extra Expense Additional Coverage for Food Contamination. From the plain language of this provision, it is clear that the exclusion does not apply to Business Income And Extra Expense. Defendant's outright denial of coverage, when there is coverage available for Rosebud within the policy, is in bad faith.

In addition, the location of the Virus Exclusion is misleading and ambiguous. Since the exclusions are not listed under the Covered Causes of Loss, the exclusions do not apply to Covered Property. *See* Glaser Report, p. 8. Further, the wording of the virus exclusion is written regarding human conditions, it does not mention or tie in loss to property. (*Id.*). Regent could have properly

positioned their virus exclusion and could have used the ISO language which would have covered property. They failed to do either of these options and supplied an ambiguous policy to Rosebud.

Defendant relies upon AFM Mattress Co., LLC v. Motorists Commer. Mut. Ins. Co., 2020 U.S. Dist. LEXIS 221121. This case is distinguishable to the Rosebud's situation. First, the policy language contained in AFM Mattress Co., LLC is not synonymous with the Policy written to Rosebud. Second, the placement of exclusions in AFM Mattress Co., LLC is different than the placement of the exclusion in the policy written to Rosebud. The placement of the exclusions in the Rosebud policy preclude it from applying to covered property. Additionally, the placement of the exclusions in the Rosebud policy are written regarding human conditions and the presence of the virus in humans, on the premises. Plaintiff is not alleging that the closure was caused because of the presence of a virus within the property. Thus, it does not fall within the virus exclusion.

Finally, even standing the rule of interpretation on its head and construing the policy in favor of Defendant, the policy is at most, ambiguous as to whether the virus exclusion is limited to stand-alone occurrences of a virus or can be read as incorporating pandemics. As noted above, such ambiguities in insurance policies must be read in favor of the insured. Accordingly, the exclusion should be read as being limited to stand-alone occurrences of the virus.

### 3. Outcomes of Other Cases are Not Dispositive

Across the country, courts are currently grappling with insurance cases arising from the COVID-19 pandemic and government Orders restricting business operations. Defendant's argument relies heavily on citation to other insurance cases. None of the cases cited by Defendant are dispositive in this case. The nature of insurance disputes, where a change in a single word or punctuation mark can change an outcome, requires that each case be carefully analyzed based on its unique facts. This case is no exception – the text of the insurance policy and facts of the case

must be carefully considered, and undue weight should not be given to prior cases with some superficial similarities.

Contrary to Defendant's argument, the issues raised in the instant motion to dismiss are far from well-settled in Illinois or in any other jurisdiction. Numerous Courts have denied motions to dismiss brought on similar grounds. *See, e.g., Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-265, 2020 BL 479131, 2020 U.S. Dist. Lexis 231935, 2020 WL 7249624 (E.D. Va. Dec. 09, 2020), Court Opinion (12/09/2020); *Studio 417 Inc. v. The Cincinnati Insurance Co.*, 20 C 3127-SRB, 2020 U.S. Dist. LEXIS 147600 (S.D. Mo. Aug. 12, 2020); *Ridley Park Fitness, LLC v. Philadelphia Indemnity Insurance Co.*, No. 200501093 (Pa. Ct. Com. Pl. Aug. 13, 2020); *Dino Palmieri Salons, Inc. v. State Automobile Mutual Insurance Company*, No. CV-20-932117 (Ohio Ct. Common Pleas). Plaintiff requests this Court follow these and similar authorities and deny Defendants motion to dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff, Rosebud Restaurant, Inc., respectfully requests that this Court deny Defendant, Regent Insurance Co.'s motion to dismiss in its entirety, or in the alternative, grant Plaintiff leave to amend the complaint.

                                              Respectfully submitted,

                                              *Anthony Cuda*
                                              Attorney for Plaintiff

Attorney No.: 3126045
CUDA LAW OFFICES, LTD.
6525 West North Avenue, Suite 204
Oak Park, Illinois 60302
708-383-4900