IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEBUD RESTAURANT, INC., )<br>)<br>     *Plaintiff*, )<br> v. )<br>)<br>QBE NORTH AMERICA, a/k/a QBE )<br>AMERICAS, INC., a/k/a QBE INSURANCE )<br>GROUP LIMITED and REGENT INSURANCE )<br>CO., )<br>)<br>     *Defendants*. | No. 20 C 5526<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosebud Restaurant, Inc. ("Rosebud") brings suit against Defendants QBE Americas, Inc. [1] and Regent Insurance Co. ("Regent") following Defendants' denial of insurance coverage for Rosebud's lost business income due to the coronavirus pandemic. Rosebud asserts claims for declaratory relief, breach of contract, and bad faith denial of insurance under 215 ILCS 5/155. Before the Court is Defendant Regent's motion to dismiss the First Amended Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Regent's motion to dismiss [22] is granted.

## BACKGROUND

The following factual allegations are taken from Rosebud's First Amended Complaint ("FAC") and are assumed to be true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

---

[1] Rosebud voluntarily dismissed its claims against the QBE Defendants. (*See* Dkt. 33).

1

I.  **Closure Orders**

Rosebud owns and operates eleven restaurants in the Chicago metropolitan area. (Dkt. 18 at ¶¶ 1). On March 11, 2020, the World Health Organization declared that the ongoing threat from the novel coronavirus, known as COVID-19, constituted a global pandemic. (*Id.* at ¶¶ 6). On March 15, 2020, Illinois Governor J. B. Pritzker issued Executive Order 2020-07 closing dine-in services at restaurants and bars to the public, followed by Executive Order 2020-10 on March 20 closing all "non-essential businesses" to prevent the spread of the coronavirus within the state. (*Id.* at ¶¶ 1, 7). These closure orders forced Rosebud to cease ordinary operations at its restaurants, resulting in lost revenue. (*Id.* at ¶¶ 2).

II. **The Policy**

At the time of the closure orders, Rosebud held an "all-risk" insurance policy with Regent effective from December 31, 2019 through December 31, 2020 ("the Policy"). (Dkt. 18 at ¶¶ 1, 5) (Dkt. 18-1 at 5). [2] The Policy generally covers "direct physical loss of or damage to Covered Property at 'covered locations' caused by or resulting from any Covered Cause of Loss." (Dkt. 18-1 at 27). Specifically, the Policy covers loss of "Business Income" and "Extra Expense" as follows:

> a. Business Income
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at your "covered location". The loss or damage must be caused by or result from a Covered Cause of Loss.
> …
> b. Extra Expense
> Extra Expense means the necessary expenses you incur during the

---

[2] The Policy is attached to the complaint and referenced therein, and thus, may be considered along with the allegations. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such.").

> "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss. We will pay: (1) Any Extra Expense to avoid or minimize the "suspension" of business and to continue "operations" … (2) Any Extra Expense to minimize the "suspension" of business if you cannot continue "operations".

(*Id.* at 51). Additionally, the Policy contains a Civil Authority clause covering "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the 'covered locations.'" (*Id.* at 52). "Covered Causes of Loss" means "Risk of Direct Physical Loss" and expressly excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 56, 59).

### III. Rosebud's Claim for Coverage

Rosebud filed a claim under this Policy for coverage of its losses stemming from the mandated COVID-19 closures under the Business Income, Extra Expenses, and Civil Authority provisions of the Policy. (Dkt. 18 at ¶¶ 30, 33–34). Regent denied the claim, asserting that Rosebud's losses were not covered by the Policy. (*Id.* at ¶ 5). On December 2, 2020, Rosebud filed the instant complaint seeking declaratory judgment that its loss is covered and asserting claims of breach of contract and bad faith denial of insurance claims, 215 ILCS 5/155, against Regent. (*Id.* at ¶¶ 35–52).

### **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a 12(b)(6) motion, a complaint must contain sufficient facts that when "accepted as true … 'state a claim to relief'" that is facially "'plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). The Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Conclusory statements and legal conclusions, however, are not entitled to the same deference. *Iqbal*, 556 U.S. at 680.

## DISCUSSION

I.  **Declaratory Judgment and Breach of Contract (Counts I and II)**

   a.  **Direct Physical Loss or Damage**

The interpretation of an insurance policy under Illinois law is a "question[ ] of law that the court may resolve summarily." *Roman Cath. Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998). ³ Under Illinois law, "insurance disputes are governed by general contract principles." *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). These principles dictate that when the words of a policy are "clear and unambiguous," they must be given their "plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). The language of a policy, however, "is not rendered ambiguous simply because the parties disagree as to its meaning." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

The parties dispute whether Rosebud suffered "direct physical loss of or damage to" property triggering coverage under the Policy. (Dkt. 18-1 at 27). Regent maintains the Policy requires structural alteration to property. Rosebud contends this interpretation renders the

---

³ Rosebud asks the Court to consider the expert report of Kevin L. Glaser, whom it represents is an expert in insurance and risk management. (*See* Dkt. 27-3). To begin, the report is not referenced or attached to the FAC and the Court may not consider such extrinsic evidence on a motion to dismiss without converting it into a motion for summary judgment. Fed. R. Civ. P. 12(b). Moreover, because Glaser interprets the Policy and opines on whether Rosebud's claims should be covered, consideration of his opinions would "usurp the Court's role in interpreting the [Policy] language." *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1023 (N.D. Ill. 2010) (citing *RLJCS Enters., Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir.2007)). The Court declines to consider Glaser's report.

4

distinction between "physical loss" and "physical damage" meaningless, arguing that though it did not suffer "physical damage" to the property, the term "physical loss" is broader and "encompasses a situation where businessowners … lose the full range of rights and advantages of using or accessing their business property." (Dkt. 27 at 6).

Rosebud's interpretation circumvents the plain and clear meaning of "direct physical loss of … Covered Property." (Dkt. 18-1 at 27). Although the word "loss" by itself may refer to a "depriv[ation] of … a possession," *see Loss*, Oxford English Dictionary (2d ed. 1989) (def. 2a), here, it is modified by the adjective "physical," meaning "tangible, concrete." *See Physical*, Oxford English Dictionary (3d ed. updated Mar. 2006) (def. 6); *see also Physical,* Black's Law Dictionary (11th ed. 2019) (def. 2) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"). Thus, the meaning of "direct physical loss" in the Policy is unambiguous and connotes actual, tangible consequences rather than a figurative loss of property through deprivation of use. In other words, the nature of the claimed loss must be *physical* and the loss of use without any tangible effect on the physical condition or location of the insured property is not a "physical loss."

Contrary to Rosebud's suggestion, this interpretation does not render the term "physical damage" superfluous. The Policy makes an express distinction between "physical loss *of*" and "physical damage *to*" property. (*See* Dkt. 18-1 at 27) ("We will pay for direct physical loss of or damage to Covered Property…."). An insured may suffer physical loss of property, say if someone steals the chairs and tables at one of Rosebud's restaurants, but may not suffer damage to that property, if for example, our thief stole the furniture for use in his own restaurant. Conversely, an insured may suffer physical damage to property, if someone breaks Rosebud's chairs and tables, without suffering a loss of that property, if the broken furniture was left at the premises. Rosebud's

5

objection misses the point that in either case, the loss or damage suffered must be *physical* for coverage to kick in. Rosebud does not allege that the closure orders or coronavirus had any physical effect on its properties and the mere loss of use without any such physical consequences is insufficient.

A majority of courts in this district have interpreted similar language in insurance contracts consistently, denying coverage for claims premised on closure orders due to the coronavirus. *See e.g., Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020) (construing "direct physical loss" to mean "actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure."); *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, -- F.Supp.3d--, No. 20 C 3169, 2021 WL 1208969, at *2 (N.D. Ill. Mar. 31, 2021) ("Direct physical loss" means "a deprivation caused by a tangible or concrete change in or to the thing that is lost[,]" not loss of use of a premises.); *Image Dental, LLC v. Citizens Ins. Co. of Am.*, No. 20-CV-02759, 2021 WL 2399988, at *7 (N.D. Ill. June 11, 2021) ("[T]here is no coverage for loss of use without a physical loss."); *CFIT Holding Corp. v. Twin City Fire Ins. Co.*, No. 20 C 3453, 2021 WL 2853376, at *3 (N.D. Ill. July 8, 2021) (finding no coverage under policy requiring "direct physical loss of" property "where, as here, a government closure order prohibits access to a business's premises but does not detrimentally change the physical condition or location of property at those premises."); *G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, No. 20 C 5644, 2021 WL 2853370, at *4 (N.D. Ill. July 8, 2021) (same); *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 20 C 4839, 2021 WL 2853371, at *7 (N.D. Ill. July 8, 2021) (same); *Cozzini Bros., Inc. v. The Cincinnati Insurance Company, Inc.*, No. 20-cv-4274, 2021 WL 3408499 (N.D. Ill. Aug. 4, 2021); *see also Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021)

(Policy requiring "direct physical loss to" property "cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage."). While a few courts in this district disagree, *see In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 20 C 02005, 2021 WL 679109, at *8–10 (N.D. Ill. Feb. 22, 2021) *and* D*erek Scott Williams PLLC v. Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617, at *3–5 (N.D. Ill. Feb. 28, 2021), "disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous." *Chief of Staff LLC*, 2021 WL 1208969, at *4 (citing *Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996)). Rosebud fails to plead that the coronavirus or closure orders caused demonstrable, tangible consequences to its property as required by the Policy, and consequently, fails to establish a plausible claim for coverage under the Business Income, Extra Expenses, and Civil Authority provisions. [4]

b. **Virus Exclusion Clause**

Even if the term "direct physical loss or damage" included loss of use of Rosebud's restaurants, Rosebud's claim for coverage independently fails under the Policy's virus exclusion clause which expressly excludes from coverage any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Dkt. 18-1 at 56, 59). There is no dispute that the coronavirus is a virus, bacterium or microorganism that causes illness or disease; rather, Rosebud contends that its losses were caused by the *closure orders* and not the coronavirus. This assertion, however, is directly contradicted by the FAC which states, "The continuous presences of the *coronavirus* on or around Plaintiff's premises has rendered the premises unsafe and unfit for their intended use

---

[4] Because the Civil Authority provision requires "direct physical loss of or damage to" property, the Court declines to address Regent's remaining arguments regarding why the Civil Authority provision does not apply to Rosebud's claimed losses. (Dkt. 18-1 at 27, 52).

and therefore caused physical property damage or loss under the Policies." (Dkt. 18 at ¶ 29) (emphasis added). Moreover, Rosebud's distinction between the virus and the closure orders ignores the fact that the orders were issued "in direct response due to" the coronavirus, (Dkt. 18 at ¶ 30), and that the exclusion applies to loss or damage "caused by *or* resulting from" any virus. (Dkt. 18-1 at 59) (emphasis added). Thus, while Rosebud's loss of use of its premises may not have been directly *caused* by the coronavirus, it certainly *resulted from* the coronavirus. *See Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 955 (7th Cir. 2020) ("[M]eaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary[.]") (quoting *Coles-Moultrie Elec. Co-op. v. City of Sullivan*, 709 N.E.2d 249, 253 (Ill. App. Ct. 1999)).

Furthermore, the exclusion clause contains an anti-concurrent causation clause, providing that "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (Dkt. 18-1 at 57). The sequence of events is clear here: the coronavirus pandemic caused the closure orders, which caused Rosebud to shut down its restaurants, which resulted in Rosebud's claimed losses. (Dkt. 18 at ¶¶ 1, 3–4, 28, 30–31, 33). Applying the express terms of the anti-concurrent clause, Rosebud's losses are excluded because notwithstanding the other events in the chain of causation, the losses were at least in part caused by the coronavirus.

Next, Rosebud argues the virus exclusion should not apply because the closure orders were a result of the coronavirus *pandemic*, not merely the corona*virus*. Once again, Rosebud ignores the clear language of the exclusions clause which "appl[ies] whether or not the loss event results in widespread damage or affects a substantial area." (*Id*.) By Rosebud's own definition, a "pandemic" is "an outbreak of a disease that occurs over a wide geographic area … and typically

8

affects a significant proportion of the population….*"* (Dkt. 27 at 10) (quoting *Pandemic*, Merriam-Webster (Online ed. 2021)). Thus, the virus exclusion clause applies alike to losses caused by a single instance of virus and those caused by a viral pandemic.

Finally, Rosebud argues the virus exclusion clause expressly excludes Business Income and Extra Expense losses and does not apply to covered property because it is not listed under the Covered Causes of Loss. Rosebud attempts to manufacture ambiguity where none exists. First, by its express terms, the virus exclusion clause only excludes "Business Income And Extra Expense Additional Coverage for *Food Contamination*[,]" which is one type of Business Income and Extra Expense loss. (Dkt. 18-1 at 55, 59) (emphasis added). Further, the Covered Causes of Loss provision expressly excludes "Exclusions" contained in paragraph C of the Policy, one of which is the virus exclusion clause. The Policy is clear and excludes coverage for Rosebud's claimed losses under the virus exclusion clause. Counts I and II, premised on such coverage, are dismissed.

## II. Bad Faith Denial of Insurance (Count III)

Section 5/155 of the Illinois Code provides a remedy "to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1023 (7th Cir. 2013). Because there is no coverage, however, Rosebud's bad-faith denial of coverage claim also fails. *See Martin v. Illinois Farmers Ins.*, 318 Ill. App. 3d 751, 764 (Ill. App. Ct. 2000) ("[A] defendant cannot be liable for section 155 relief where no benefits are owed."). Count III is also dismissed.

## CONCLUSION

For the reasons stated herein, Regent's motion to dismiss [22] is granted. Rosebud's Complaint is dismissed without prejudice. If possible, Rosebud may amend its complaint,

consistent with this Order, within 21 days of the issuance of this Order.

                                                                                                 _____
                                                                                                 Virginia M. Kendall
                                                                                                 United States District Judge

Date: September 20, 2021