IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSEBUD RESTAURANT, INC., | )<br>)<br>) |
| *Plaintiff*, | ) No. 20 C 5526 |
| v. | )<br>) Judge Virginia M. Kendall |
| REGENT INSURANCE CO., | )<br>) |
| *Defendant*. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosebud Restaurant, Inc. ("Rosebud") brings suit against Defendant Regent Insurance Co. ("Regent") asserting claims for declaratory relief, breach of contract, and bad faith denial of insurance under 215 ILCS 5/155 following Regent's denial of insurance coverage for Rosebud's business income loss due to an alleged "contaminant" present on Rosebud's restaurant properties. (Dkt. 58 at ¶¶24, 41, 47, 53). Regent's moves to dismiss Rosebud's Second Amended Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, Regent's Motion to Dismiss [61] is granted.

## BACKGROUND

For the purposes of this motion, the following factual allegations are taken from Rosebud's Second Amended Complaint ("SAC") are assumed to be true. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Rosebud is the owner and operator of eleven restaurants in the Chicago metropolitan area. (Dkt. 58, SAC ¶1). Rosebud alleges that a "contaminant" present in the air and physical surfaces, in addition to the closure orders (due to the coronavirus pandemic) set forth by the State of Illinois,

forced Rosebud to close its restaurants and later only partially reopen until the "contaminant" was brought under control. (*Id.* ¶¶2-3, 8-9).[1] The "containment" present in and on Rosebud's restaurant properties prohibited Rosebud from operating in the same capacity as they were prior to the "contaminant," as it reduced the number of patrons it could serve at one time and altered the air and surfaces on the property. (*Id.* ¶¶6, 9). Rosebud alleges that due to a contaminant and the resultant closure orders, it was "unable to operate in the manner in which it had previously operated" (¶5), it had suffered "diminishment of the physical space of the property. What once could hold many now can safely hold only a few" (¶6) and thus it was forced to "suspend or reduce" its operations (¶8).

At the time of Rosebud's closure, Rosebud held an "all-risk" insurance policy with Regent effective from December 31, 2019, through December 31, 2020 ("the Policy"). (*Id.* ¶31) (Dkt. 58-1 at 5).[2] The Policy generally covers "direct physical loss of or damage to Covered Property at 'covered locations' caused by or resulting from any Covered Cause of Loss." (Dkt. 58-1 at 27). Specifically, the Policy covers loss of "Business Income" and "Extra Expense" as follows:

> a. Business Income
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at your "covered location". The loss or damage must be caused by or result from a Covered Cause of Loss.
> …
> b. Extra Expense

---

[1] Rosebud's Second Amended Complaint avoids mentioning COVID-19 or the coronavirus by name, instead referring simply to "contaminants." However, the Complaint does refer to "closure orders" from the State of Illinois that were issued as a result of the COVID-19 pandemic, and Rosebud's Opposition acknowledges the issue is the same as other "COVID related business interruption cases." (Dkt 65). Rosebud does not contest that the contaminant is COVID-19.

[2] The policy is attached to the complaint and referenced therein, and thus, may be considered along with the allegations. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such.").

> Extra expense means the necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss. We will pay (1) Any Extra Expense to avoid or minimize the "suspension" of business and to continue "operations" . . . (2) Any Extra Expense to minimize the "suspension" of business if you cannot continue operations".

(*Id.* at 51). The Policy also contains a Civil Authority clause covering "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the 'covered locations.'" (*Id.* at 52). "Covered Causes of Loss" means "Risk of Direct Physical Loss" and excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 56, 59).

Rosebud filed claims for coverage for the business income lost due to a "contaminant" within their properties and COVID-19 closure orders under the Business Income, Extra Expenses, and Civil Authority provisions of the Policy. (Dkt. 58 ¶¶ 19, 21, 49). Regent denied the claim, asserting Rosebud's losses were not covered by the Policy. (*Id.* ¶ 21).

On August 8, 2020, Rosebud filed a complaint seeking a declaratory judgement that their loss is covered, and asserted claims of breach of contract and bad faith denial of insurance claims under 215 ILCS 5/155. (Dkt. 18 ¶¶35-52).[3] Defendants removed the case to this Court on September 18, 2020. (Dkt. 6). On December 2, 2020, Rosebud filed its First Amended Complaint (*Id.*). Regent moved to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6) (Dkt. 22 at 1-2). The Court granted Regent's motion, finding that lost business income from the coronavirus pandemic ("COVID-19") was not a "direct physical loss" and excluded from its insurance policy. (Dkt. 56 at 6, 7-8). The Court granted leave for Rosebud to file an amended complaint, if it was

---

[3] Rosebud also named QBE Americas, Inc in its initial Complaint. On February 11, 2021, Rosebud filed a notice of voluntary dismissal of all claims against QBE. (Dkt. 33).

able, within twenty-one days. (*Id.* at 9-10). On October 11, 2021, Rosebud filed the instant SAC, once again seeking a declaratory judgement and bringing claims of breach of contract and bad faith denial of insurance claims against Regent. (Dkt. 58 ¶¶ 24, 41, 47, 53).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a 12(b)(6) motion, a complaint must contain sufficient facts that when "accepted as true … 'state a claim to relief'" that is facially "'plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570. (2007)). The Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Conclusory statements and legal conclusions, however, are not entitled to the same deference. *Iqbal*, 556 U.S. at 680.

## DISCUSSION

I. **Declaratory Judgment and Breach of Contract (Counts I and II)**

    A. **Direct Physical Loss or Damage**

The interpretation of an insurance policy under Illinois law is a "question[ ] of law that the court may resolve summarily." *Roman Cath. Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998). Under Illinois law, "insurance disputes are governed by general contract principles." *Sigler v. GEICO Casualty Co.*, 967 F.3d 658, 660 (7th Cir. 2020). These principles dictate that when the words of a policy are "clear and unambiguous," they must be given their "plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). "Ambiguity exists when language of a policy is "subject to more than one

reasonable interpretation" and "is not rendered ambiguous simply because the parties disagree as to its meaning." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005); *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010). Furthermore, the Court "will not strain to find an ambiguity where none exists." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

In its prior Order, the Court found that "the meaning of 'direct physical loss' in the Policy is unambiguous and connotes actual, tangible consequences rather than a figurative loss of property through deprivation of use. In other words, the nature of the claimed loss must be physical and the loss of use without any tangible effect on the physical condition or location of the insured property is not a 'physical loss.'" (Dkt. 56 at 5). Still, Rosebud reargues that "direct physical loss" is ambiguous and contends that the term "direct physical loss" encompasses situations in which policy holders are unable to fully utilize their property. (Dkt. 65 at 5.)

The Seventh Circuit's recent opinion in *Sandy Point* (decided after this Motion was fully briefed) foreclosed this interpretation.[4] *Sandy Point Dental P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021). There, one plaintiff alleged that they suffered a covered "physical loss" because of the "continuous presence of the coronavirus on or around Plaintiff'[s] premises has rendered the premises unsafe and unfit for its intended use." *Id.* at 334. This allegation—mirrored in Rosebud's SAC (¶¶12, 17)—was inadequate to allege "physical loss." *Id.* at 334. Another *Sandy Point* plaintiff alleged that the ""[SARS-CoV-2] droplets can ... attach to surfaces" and that the

---

[4] Other courts considering this issue have come to the same conclusion. See, *e.g., Santo's It. Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401–03 (6th Cir. 2021) (applying Ohio law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 15 F.4th 885, 892 (9th Cir. 2021) (applying California law); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (applying Georgia law).While Rosebud relies on the reasoning in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800–01 (W.D. Mo. 2020), that reasoning was rejected by the Seventh Circuit in *Sandy Point*. 20 F.4th at 333.

virus "can survive on solid surfaces for significant periods of time [and] can be spread long distances through the air." *Id.* at 336. These allegations, which the Seventh Circuit said "fared no better" than the allegations of an "unsafe and unfit" premises, are the same nature as Rosebud's allegations that "[s]mall droplets of contaminants can remain in the air as an aerosol, which can remain suspended in the air for hours, travel prolonged distances indoors along air currents induced by the heating and ventilation ("HVAC") system, and travel from room to room." (SAC ¶11).

Sandy Point proposed adding an additional allegation to cure its pleading deficiencies similar to the allegations Rosebud makes here—that the physical attachment of COVID-19 particles (or as Rosebud calls them, "droplets" and "nuclei") deprives them of their premises. But these allegations are still insufficient, because "Even if the virus was present *and* physically attached itself to Sandy Point's premises, Sandy Point does not allege that the virus *altered* the physical structures to which it attached, and there is no reason to think that it could have done so. While the impact of the virus on the world over the last year and a half can hardly be overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days." *Sandy Point,* 20 F.4th at 334.

Like the *Sandy Point* insureds, Rosebud has "alleged neither a physical alteration to property nor an access- or use-deprivation so substantial as to constitute a physical dispossession." *Sandy Point*, 20 F.4th at 337; *see also Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 421 (7th Cir. 2022) ("Absent such alteration, direct physical loss occurs only when a risk causes 'complete physical dispossession of property,' and the COVID-19 virus does not. "); *E. Coast Ent. of Durham, LLC v. Houston Cas. Co.,* 31 F.4th 547, 550 (7th Cir. 2022) ("[M]ere loss of use due to COVID-related closures does not constitute "direct physical loss" when

unaccompanied by any physical alteration to property.") While alleging that it was "unable to operate in the manner in which it had previously operated," Rosebud has not alleged more than a "temporary denial of their preferred use of the property," which is not a physical alteration. *Paradigm Care*, 33 F.4th at 421-422 ("The [Plaintiffs] do not assert—nor could they under the plain and unambiguous terms of the policies—that their property was physically altered by the COVID-19 virus, such that it had to be repaired, rebuilt, or replaced.")

Rosebud alleges the particles of the "contaminant" present throughout the property and on its surfaces rendered the property "unsafe and thus unusable" and such loss of use is a direct physical loss. (Dkt. 58 at ¶¶ 12, 17) (Dkt. 65 at 6). This argument has been rejected by the Seventh Circuit. See *Paradigm Care*, 33 F.4th at 421 (finding that "the COVID-19 virus does not effect physical loss or damage to property" under Illinois law, because "the virus ultimately leaves the property physically unaltered ... [and] [a]bsent such alteration, direct physical loss occurs only when a risk causes 'complete physical dispossession of property,' and the COVID-19 virus does not.") Rosebud's allegations that the contaminant caused physical loss "by among other things, destroying, distorting, corrupting, attaching to, and physically altering property. . . ." (Dkt. 58 at ¶ 12) is a legal conclusion that the Court need not credit. Additionally, "even if [COVID-19] was present and physically attached" to Rosebud's properties, it is established that the virus "may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days," and thus, does not physically alter the property. *Sandy Point Dental, P.C,* 20 F.4th at 335. See *Paradigm Care & Enrichment Ctr, LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 421 (7th Cir. 2022) ("the COVID-19 virus does not effect physical loss of or damage to property"). As the "contaminant" can be removed from Rosebud's restaurants almost instantaneously, there is no "period of restoration" and the "contaminant" did not cause a physical alteration to the property to

constitute a "direct physical loss or damage" as Rosebud has "nothing to repair, rebuild, or replace." *Sandy Point Dental, P.C.,* 20 F.4th at 333; *See also Paradigm Care, LLC*, 33 F.4th at 421-22; *E. Coast Ent. Of Durham, LLC*, 31 F.4th at 551; *Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, 2022 WL 1965903, at *1 (7th Cir. June 6, 2022) ("Windy City's intended operations may have been rendered untenable for a time, but its premises were not rendered uninhabitable or unsuitable for all other conceivable uses."); *Green Beginnings, LLC v. W. Bend Mut. Ins. Co.,* No. 21-2186, 2022 WL 1700139, at *1 (7th Cir. May 27, 2022) ("COVID-19 does not generally result in complete physical dispossession of property.")

As the Seventh Circuit observed in *Paradigm Care*, "[t]he COVID-19 pandemic undoubtedly caused tremendous financial strain to [ ] businesses . . . . But the losses and expenses they allege are simply not covered under the ordinary and unambiguous terms of their insurance policies." 33 F.4th at 423. The same is true here. The financial strain on businesses—particularly restaurants—due to the COVID-19 pandemic is now well documented, but Rosebud's allegations do not establish a plausible claim for coverage under the unambiguous language of the Policy here.

B. Virus Exclusion Clause

Even if Rosebud had established a plausible claim for coverage, its claim independently fails under the Policy's virus exclusion clause which expressly excludes from coverage any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Dkt. 58-1 at 56, 59). As the Court found in its prior order, "there is no dispute that [COVID-19] is a virus," Rosebud's business income loss falls within the Policy's exclusion clause as it was the result of and/or caused by COVID-19, and falls within the Policy's exclusion clause. (Dkt. 56 at 7).

Rosebud's contention that the virus exclusion applies to a virus within humans and not an airborne virus is an attempt to manufacture ambiguity where none exists. While "ambiguities in an insurance policy will be construed against the insurer, courts will not distort the language of a policy to create an ambiguity where none exists. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.,* 20 F.4th 311, 322 (7th Cir. 2021) (quoting *Dixon Distrib. Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 399 (1994)). Rosebud's argument ignores this Court's determination that the placement of the virus exclusion clause does not render the clause ambiguous. *See* Dkt. 56 at 9 ("[T]he Covered Causes of Loss provision expressly excludes "Exclusions" contained in paragraph C of the Policy, one of which is the virus exclusion clause"). There is no language in the virus exclusion clause to plausibly claim this clause relates only to viruses within humans. (Dkt. 58-1 at 59). The exclusion clause plainly establishes that Regent "will not pay for loss or damage caused directly or indirectly" by viruses and "applies whether or not the loss event results in widespread damage or affects a substantial area." (*Id.* at 57, 59). The applicability of the virus exclusion to Rosebud's claims is clear and free from doubt. *Mashallah,* 20 F.4th at 320. *See also ABC Diamonds, Inc. v. Hartford Cas. Ins. Co.*, No. 22-1026 2022 WL 1830692 at *1 (7th Cir. June 3, 2022) (applying virus exclusion clause to COVID-19 claims); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th at 310 (same).

Rosebud argues Regent's previous revision to the Policy's virus exclusion language is sufficient on its own to determine the exclusion policy language is ambiguous. (Dkt. 65 at 10). However, "[r]evising language in an insurance policy does not constitute an admission that an alternative interpretation of the original language was correct." *Crescent Plaza Hotel Owner, L.P.,* 20 F.4th at 311 ("As the pandemic spread and disputes were arising on the scope of insurance coverage, it was sensible for [the insurer] to make even clearer to policyholders that losses arising

from COVID-19 would not be covered. We have recognized that revising language in an insurance policy does not constitute an admission that an alternative interpretation of the original language was correct."), citing *Pastor v. State Farm Mutual Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007). The Policy is clear and excludes coverage for Rosebud's claimed losses under the virus exclusion clause. Counts I and II are dismissed.

## II.  Bad Faith Denial of Insurance (Count III)

Rosebud's bad-faith denial of coverage claims also fails. As there is no coverage for Rosebud's alleged damage, Regent is not, "refus[ing] to recognize liability and pay a claim under a policy" as provided in Section 5/155 of the Illinois Code. *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1023 (7th Cir. 2013). *See Martin v. Illinois Farmers Ins.*, 318 Ill. App. 3d 751, 764 (Ill. App. Ct. 2000) ("[A] defendant cannot be liable for section 155 relief where no benefits are owed."). *See also Sandy Point Dental, P.C.*, 20 F.4th at 337; *E. Coast Ent. Of Durham, LLC*, 31 F.4th at 551 ("Because [plaintiff] does not have a valid claim for coverage, its bad-faith denial of coverage claim necessarily fails as well.") Count III is dismissed. (Dkt. 56 at 9).

## CONCLUSION

For the reasons stated within, Regent's Motion to Dismiss (Dkt. 61) is granted. As Rosebud had several opportunities to state a claim and has failed to do so, Rosebud's Second Amended Complaint is dismissed with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: July 11, 2022